IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LORETTA REYNOLDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No.   07-cv-754 JPG/CJP |
| ) | |
| CB SPORTS BAR, INC., an Illinois ) | |
| corporation, BRENDA L. RUSSELL, and ) | |
| CASEY J. CARSON, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This cause comes before the Court on defendant CB Sports Bar, Inc.'s ("CB Sports") Motion to Dismiss (Doc. 23) pursuant to Federal Rules of Civil Procedure 12(b)(5) and (6). Plaintiff Loretta Reynolds ("Reynolds") has responded to the motion (Doc. 26), and CB Sports has replied to that response (Doc. 27).

This case arose after Reynolds was visiting the southern Illinois area and, on the evening of October 26, 2005, and early morning of October 27, 2005, went to Jerzey's Sports Bar ("Jerzey's"), owned by CB Sports. When she tried to leave the bar to drive back to her hotel, she found that her car would not start. Reynolds alleges that she returned to the bar and asked the bartender to help her get a taxi. She claims the bartender told her there were no taxis or other kinds of assistance available and she would have to get a ride to her hotel with someone else. Reynolds claims defendants Brenda L. Russell ("Russell") and Casey J. Carson ("Carson") offered to drive her to her hotel after buying her drinks and possibly drugging her. After the three left Jerzey's together, Reynolds learned that Russell and Carson were attempting to abduct her in order to sexually exploit her. Despite her intoxicated state, Reynolds escaped from

Russell and Carson's vehicle and began walking to her hotel. She was then struck by a truck as she walked along the roadside.

Reynolds filed this lawsuit alleging negligence against Russell, Carson and CB Sports (Counts 1 and 2) and claiming punitive damages (Count 3). CB Sports asks the Court to dismiss Reynolds's claims against it for two reasons: (1) it was served late without good cause, and (2) Reynolds fails to state a claim on which relief can be granted. The Court will address each issue in turn.

**I.     Service of Process**

This portion of CB Sports's motion is governed by Rule 12(b)(5), which governs requests for dismissal for insufficient service of process such as, for example, when service is untimely under Federal Rule of Civil Procedure 4(m). When the sufficiency of service of process is challenged, the plaintiff has the burden of proving adequate service. *Lindsey v. United States*, 448 F. Supp. 2d 37, 42 (D.D.C. 2006) (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)).

A.     Relevant Service Facts

Reynolds filed this lawsuit in October 2007, and summons was issued on January 2, 2008, for service on CB Sports at the address for Jerzey's. Reynolds claims she sent the summons and complaint via certified mail, but no one from CB Sports picked up or signed for the certified delivery. Alias summons was issued on February 14, 2008, this time to CB Sports at the address listed on a 2005 liquor license application filed by Christian Biancur ("Biancur"), president of CB Sports and manager of Jerzey's. Reynolds again says she sent the summons and complaint by certified mail, and again no one picked it up or signed for it. Service on CB Sports was eventually made by personally delivering the summons and complaint to Biancur at Jerzey's on June 10, 2008.

Since Reynolds filed this case Jerzey's has generally been open ten hours a day with a manager present at all times except holidays. Biancur himself was present at Jerzey's in person five days a week for 30 to 60 hours per week during January and February 2008.

CB Sports asks the Court to dismiss this case because Reynolds served it more than 120 days after the complaint was filed. Reynolds argues that she had good cause for failing to serve CB Sports in a timely manner because Biancur was evading service of process.

B. <u>Analysis</u>

The Court's review of this matter necessarily starts with Federal Rule of Civil Procedure 4(m), which governs the time in which process must be served. That rule provides, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). This rule requires a court to grant an extension if the plaintiff shows good cause, but leaves it to the court's discretion whether to grant an extension if the plaintiff shows excusable neglect. *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002); *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340-41 (7th Cir. 1996).

Reynolds has not shown good cause for delay of service. She argues that she had good cause for the delay because CB Sports failed to accept its certified mail containing the summons and complaint. She fails to understand, however, that certified mail is generally not an acceptable form of service for litigants in federal district courts sitting in Illinois. *See* Fed. R. Civ. P. 4; 735 ILCS 5/2-201, *et seq.*; 805 ILCS 5/5.25. CB Sports had no obligation to accept certified mail and was not evading service by failing to do so. In fact, CB Sports could easily

have been served at Jerzey's on numerous occasions in January and February 2008 when Biancur or another officer or agent was physically present there. *See* 735 ILCS 5/2-204. There is no good reason for Reynolds to have waited until June 10, 2008, to do so.

Nevertheless, the Court is mindful that CB Sports was eventually properly served and that dismissal without prejudice at this point would effectively terminate Reynolds's chance at recovery since the two-year personal injury statute of limitations for her claims has expired. In the absence of good cause, whether the statute of limitations has expired on the claim is a factor that the Court should consider when exercising its discretion to dismiss the case or extend the 120-day deadline. *Panaras*, 94 F.3d at 341. Because Reynolds eventually accomplished service properly and because she would be seriously prejudiced by dismissal even without prejudice, the Court will exercise its discretion to extend the time for service and to deem the June 10, 2008, service valid.

**II.    Statement of Claim**

   A.    Negligence

This portion of CB Sports's motion is governed by Rule 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although liberal federal notice pleading standards ensure that even vague, non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*,

4

153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis S.W. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *see Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.").[1] In this case, CB Sports argues that Reynolds's pleading establishes that she is entitled to no relief.

As a preliminary matter, the parties agree that Illinois substantive law applies in this diversity case. CB Sports argues, and Reynolds concedes, that Reynolds has no cause of action based on the service of alcohol to Reynolds at Jerzey's. The parties agree that causes of action based on service of alcohol may only be brought under the Illinois Liquor Control Act, 235 ILCS 5/6-21. Reynolds's suit came too late to satisfy the one-year statute of limitations under that statute and, alternatively, would fail because she bases her claim on her own intoxication, *see* 235 ILCS 5/6-21(a) ("Nothing in this Act shall be construed to confer a cause of action for injuries to the person or property of the intoxicated person himself. . . ."). Reynolds argues instead that her cause of action against CB Sports rests on the Jerzey's bartender's failure to help her when her car would not start. She believes CB Sports had a duty to protect the welfare of its customers as business invitees on its property. CB Sports, on the other side, argues that its duty as an invitor extends only within the boundaries of its property, not to the side of the highway where Reynolds was struck by a truck.

The Court begins by examining the duty owed to customers by a business that invites customers onto its premises. To prevail in a cause of action for negligence, the plaintiff must show the defendant owed her a duty of care, the defendant breached that duty and the breach

---

[1] In deciding this portion of CB Sports's motion, the Court has not considered the materials attached to the filings.

proximately caused injury. *See Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006). Whether a duty exists is a legal question, *id.* at 1053-54, that involves consideration of public policy, *id.* at 1057. The touchstone of the Court's inquiry is "whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* The following policy considerations inform the Court's decision as to whether a duty exists: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant." *Id.*

A special relationship exists between a business and those it invites onto its property for business purposes, and that special relationship may give rise to "an affirmative duty to aid or protect another against unreasonable risk of physical harm." *Id.* at 1058. That duty is summarized in § 344 of the Restatement (Second) of Torts:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to
> (a) discover that such acts are being done or are likely to be done, or
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (1965); *Marshall*, 856 N.E.2d at 1058; *Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1190 (Ill. 2000). A business invitor should be aware

> either from common experience or known fact, that places of general public resort are also places where what men can do, they might. One who invites all may reasonably expect that all might not behave, and bears responsibility for injury that follows the absence of reasonable precaution against that common expectation.

6

*Marshall*, 856 N.E.2d at 1059 (quoting *Hills*, 745 N.E.2d at 1188 (further quotation omitted)). Accordingly, this duty is present whenever a business invites the public onto its premises for business purposes. *See Marshall*, 856 N.E.2d at 1059 (restaurant owed duty to dining patrons to protect them against unreasonable risk of physical harm from parking lot traffic). *Compare Hills*, 745 N.E.2d at 1191 (no landowner duty because little league baseball playing field not business open to general public).

It is clear that CB Sports was a business invitor that opened the doors of Jerzey's to the general public for business purposes. Thus, while Reynolds was on the premises of Jerzey's, CB Sports had a special invitor-invitee relationship with her and a duty to protect her from unreasonable risk of physical harm caused by the accidental, negligent or intentional acts of others on the premises. It would be a question for a jury whether the Jerzey's bartender breached that duty by telling her there was no taxi or other assistance available and that she would have to find a ride back to her hotel. However, Reynolds's attempt to state a negligence claim for breach of the duty owed by CB Sports suffers from another pleading flaw: she has not alleged any harm that occurred to her while on the premises of Jerzey's. Thus, she has failed to state a claim for negligence based on the breach of CB Sports's duty to her as its business invitee.

Once Reynolds left Jerzey's, CB Sports's duty to her changed. Generally, a business invitor's duty to a business invitee terminates once the plaintiff leaves the invitor's property. *Lewis v. Razzberries, Inc.*, 584 N.E.2d 437, 441 (Ill. App. Ct. 1991). Indeed, § 344 of the Restatement (Second) of Torts refers to landowner liability to business invitees "while they are upon the land" for a business purpose. *Accord Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d

7

429, 437 (7th Cir. 1978). A comment to § 314A of the Restatement (Second) of Torts echoes this position:

> A carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises. *Nor is a possessor of land under any such duty to one who has ceased to be an invitee*.

Restatement (2d) of Torts § 314A cmt. c (1965).

*Mitchell v. Archibald & Kendall* is a case analogous to the case at bar. In *Mitchell*, the plaintiffs drove a delivery truck to the defendant's warehouse. *Mitchell*, 573 F.2d at 431. When they arrived, there was already another truck at the receiving area, so one of the defendant's employees directed the plaintiffs to park the truck across the street on a public thoroughfare. *Id.* The plaintiffs parked the truck in the place suggested by the defendant's employee and were subsequently attacked by two unknown men. *Id.* The Seventh Circuit Court of Appeals held that even though the defendant knew that criminal acts had happened where the plaintiffs parked the truck in the past, the attack occurred on a public thoroughfare rather than on the defendant's premises, so the defendant had no duty to protect the plaintiffs. *Id.* at 437. As in this case, the defendant's agent's suggestion that the plaintiff behave in a certain way (there, park across the street; here, seek a ride from someone else) is not sufficient to hold the defendant responsible for acts that occurred beyond the business's premises.

There is caselaw to suggest the business invitor's duty may extend beyond the business property's boundaries at least to the means of ingress to and egress from the business property over which the business owner has some degree of control. *See, e.g., Haupt v. Sharkey*, 832 N.E.2d 198, 202 (Ill. App. Ct. 2005) (plaintiff "remained defendant's business invitee at the time he was attacked . . . even though plaintiff had at that point stepped beyond the legal property line

8

of [defendant's business]."); *Osborne v. Stages Music Hall, Inc.*, 726 N.E.2d 728 (Ill. App. Ct. 2000) ("we decline to hold [defendant's] duty to its patrons stopped at the doors of the premises, especially where [defendant] used the sidewalk to control entry by customers"); *Smith v. Rengel*, 422 N.E.2d 1146, 1147 (Ill. App. Ct. 1981) ("The duty owed by the landlord has been extended beyond the naked and precise property lines to include means of ingress and egress."); *McDonald v. Frontier Lanes, Inc.*, 272 N.E.2d 369, 372-73 (Ill. App. Ct. 1971); *Cooley v. Makse*, 196 N.E.2d 396, 398 (Ill. App. Ct. 1964). However, no party has cited any caselaw supporting the extension of the duty to such distances or circumstances as are involved in this case. Reynolds's injury occurred far beyond the ingress and egress to Jerzey's, and involved a bizarre series of events that could not reasonably have been foreseen by CB Sports.

Policy considerations weigh in favor of finding CB Sports owed no duty to Reynolds or its other business invitees once she left the Jerzey's premises (and went beyond the means of ingress and egress). As noted above, there is no reason CB Sports could have reasonably foreseen that there was a danger that one of their patrons would be hit by a vehicle while escaping from criminal activity by another Jerzey's patron after leaving the bar – or any other harm of that general nature. *See Marshall*, 856 N.E.2d at 1060 (question is whether the general character of the harm is foreseeable, not its precise nature or manner of occurrence). Unlike the risk of harm of traffic accidents posed by the proximity of a parking lot, *see id.* at 1060-61, the risk of the sort that occurred in this case could not have been anticipated generally or specifically. Indeed, after a patron leaves a bar and its immediate vicinity, numerous harms can and do happen that are both unlikely and, as a consequence, unforeseeable to the bar. Holding the bar legally responsible for all such harm would place an unreasonable burden on the bar and

9

would effectively make it the insurer of its patrons' safety long after they have left the bar. There is no policy justification for creating such a duty.

In sum, Reynolds has alleged a duty when there was no harm and harm when there was no duty. Given the allegations in her complaint, she cannot prevail on her negligence claims against CB Sports, and those claims must be dismissed for failure to state a claim.

B. Punitive Damages

Reynolds claims that she is entitled to punitive damages because when the Jerzey's bartender told her there were no taxis or other kinds of assistance available and she would have to get a ride to her hotel with someone else, he likely violated internal policies and procedures.

CB Sports argues that Reynolds's punitive damages claim cannot stand because Illinois law does not recognize an independent cause of action for punitive damages. *See Kemner v. Monsanto Co.*, 576 N.E.2d 1146, 1153 (Ill. App. Ct. 1991). CB Sports further argues that its internal policies do not create a duty where one does not otherwise exist. *See Rhodes v. Illinois Cent. Gulf R.R.*, 665 N.E.2d 1260, 1272 (Ill. 1996).

Reynolds does not address this argument in her response. Despite the liberal federal notice pleading standards, in response to a motion to dismiss, a non-moving party must proffer some legal basis to support his cause of action. *County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995). The Court will not invent it for him. *County of McHenry*, 438 F.3d at 818; *Stransky*, 51 F.3d at 1335. Here, Reynolds has not explained the basis for her punitive damages claim or why it should survive after dismissal of her negligence claims. Therefore, the Court finds she has waived objection to dismissal of her punitive damages claim.

### III. Other Defendants

Reynolds filed this case in October 2007 and served defendants Russell and Carson on February 21, 2008. Neither Russell nor Carson responded in a timely manner, yet Reynolds has not moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a). The Court will order Reynolds to show cause why her claims against Russell and Carson should not be dismissed for lack of prosecution pursuant to Federal Rule of Civil Procedure 41(b) and the Court's inherent authority to manage its docket. *See In re Bluestein & Co.*, 68 F.3d 1022, 1025 (7th Cir. 1995).

### IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** CB Sports's motion to dismiss (Doc. 23) pursuant to Federal Rule of Civil Procedure 12(b)(6);

- **DISMISSES** all claims in this case against defendant CB Sports **with prejudice**. CB Sports is terminated from this case;

- **ORDERS** Reynolds to **SHOW CAUSE** on or before November 14, 2008, why her claims against defendants Russell and Carson should not be dismissed for lack of prosecution pursuant to Federal Rule of Civil Procedure 41(b) and the Court's inherent authority to manage its docket. *See In re Bluestein & Co.*, 68 F.3d 1022, 1025 (7th Cir. 1995). Failure to respond in a timely manner to this order may result in dismissal of those claims with prejudice. The plaintiffs' filing of a proper motion for entry of default shall be a satisfactory response to this order to show cause; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: October 30, 2008**

        s/ J. Phil Gilbert
        **J. PHIL GILBERT**
        **DISTRICT JUDGE**