UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LORETTA REYNOLDS,<br><br>  Plaintiff,<br><br> v.<br><br>CB SPORTS BAR, INC.,<br><br>  Defendant. | Case No. 07-cv-754-JPG-SCW |
| LORETTA REYNOLDS,<br><br>  Plaintiff,<br><br> v.<br><br>BRENDA L. RUSSELL,<br><br>  Defendant. | Case No. 10-cv-736-JPG-SCW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendant CB Sports Bar, Inc., d/b/a Jerzey's [hereinafter "Jerzey's" or "the bar"] (Doc. 110). Plaintiff Loretta Reynolds has responded to the motion (Doc. 117), and defendant Jerzey's has further replied to plaintiff's response (Doc. 118).

**I. Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences

in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**II. Facts**

Viewing all the evidence and drawing all reasonable inferences in the plaintiff's favor, the Court finds the admissible evidence establishes the following relevant facts.

Plaintiff Reynolds visited Jerzey's, located at 950 Talon Drive, O'Fallon, Illinois, on the night of October 26, 2005. Reynolds was visiting from Oklahoma and was staying at a nearby hotel.

Upon attempting to leave the bar that night after consuming approximately two beers, Reynolds discovered that her vehicle would not start. She reentered the bar and asked a bartender

for a phonebook in order to call a cab. The bartender refused to give Reynolds a phonebook and informed Reynolds that she could not get a cab at the bar. Another bartender confirmed for Reynolds that cabs do not service the bar's location and told Reynolds that she would have to get a ride with someone at the bar. The bar's policy and standard practice, however, was to provide a phonebook or to call a cab for patrons in need of such services. Further, employees of the bar regularly assisted patrons with getting cabs, and the number of a local cab company was on the bouncer's stand near the front door of the bar.

Reynolds sat at the bar for a short time before being approached by defendant Brenda L. Russell, who offered Reynolds a ride. Reynolds saw that Russell had come to the bar with her boyfriend Casey Carson. Unsure if she could trust Russell or Carson, Reynolds asked the bartender if he knew them. The bartender responded that Russell and Carson were his friends and fine people, that they came there all the time, and that Reynolds should have no worries riding with them.

After meeting the couple, Reynolds continued to sit at the bar where Russell and Carson bought Reynolds several drinks. Moments later, Reynolds began to feel strange as if she had "a drug in [her] system of some sort." She refused any more to drink from the bartender, Carson, or Russell. During this time, Carson and Russell spoke to various people in the bar. Carson spent time talking to the bartender privately, as well as manager Bobby Kries, who knew Carson as a frequent customer of the bar.

On the early morning of October 27, 2005, Reynolds, Russell, and Carson made their way out of the bar to Carson's vehicle. On the way out, Kries saw Reynolds stumbling and approached Carson and Russell to make sure Reynolds was getting a ride with them. As the three individuals drove away from the bar, Reynolds continued to feel like she was "walking on a

3

cloud or something." When Carson began to drive in the opposite direction of Reynolds' hotel and Carson and Russell began to talk about sexual acts, Reynolds became worried and, in an attempt to get out of the situation, asked Carson to stop at a convenience store.

Russell and Carson were "swingers" (i.e. they like to engage in group sex), but neither Russell nor Carson had talked to Reynolds about making plans for sexual relations or "swinging" while at the bar that night. Carson and Russell had brought individuals back to their apartment for consensual sexual relations in the past, and on at least one occasion they picked up a single female for consensual sexual relations. These occurrences were typically not planned in advance, and Russell was unaware of any advanced plans to pick up someone at the bar the night of the incident in question.

While Russell and Carson were inside the convenience store, Reynolds left the vehicle and ran to hide in nearby grass. After some time passed, Reynolds resurfaced from the grassy area to find that Russell and Carson had left. At about 3:50 a.m., while Reynolds was trying to find her way back to her hotel, she wandered onto an interstate on-ramp and was hit by a passing vehicle, sustaining serious injuries.

**III. Procedural History**

In October 2007, Reynolds filed suit in this Court against defendants Jerzey's, Russell, and Carson (No. 07-cv-754-JPG-CJP). Reynolds alleged that her injuries were the direct and proximate result of the negligent behavior of the three defendants and further asked for punitive damages (Doc. 16).

This Court dismissed Reynolds' complaint against Jerzey's in October 2008 for failing to state a claim, reasoning that the bar's duty to Reynolds was relieved when Reynolds left its premises (Doc. 32). This Court further issued a default judgment against Carson in October 2009

(Doc. 57) and dismissed Russell without prejudice upon Reynolds' oral motion in November 2009 (Doc. 65).

Reynolds appealed this Court's ruling as to Jerzey's to the Seventh Circuit, which reversed this Court's dismissal of Jerzey's and provided an extensive analysis of the law with respect to the bar's duty to Reynolds. *See Reynolds v. CB Sports Bar, Inc*., 623 F.3d 1143 (7th Cir. 2010). This Court now considers a motion for summary judgment as to Jerzey's (Doc. 110).

**IV. Analysis**

Jerzey's has moved for summary judgment on several grounds, arguing (1) it had no duty to Reynolds to protect her from injuries that occurred away from its premises, because it had no knowledge of Carson and Russell's plans to sexually exploit her, (2) it had no duty to call a cab for Reynolds or ensure her safe passage to her hotel, and (3) its conduct was not the proximate cause of Reynolds' injuries. The Court will address each argument in the order they were presented.

**A. The Bar's Duty to Protect Reynolds from Injuries Sustained Away from the Bar's Premises**

Based upon Reynolds' suggestion that the bar's employees intentionally conspired with Russell and Carson to further the sexual exploitation of Reynolds, the Court will first address the bar's liability for an intentional tort, as opposed to the bar's liability for negligence. Next, the Court will assess whether a reasonable jury could find from the evidence that the bar acted negligently under the Seventh Circuit's holding that the bar's duty to Reynolds arises only if the bar *knew* of Russell and Carson's plan to sexually exploit Reynolds. Finally, the Court will examine whether the bartender's statements to Reynolds concerning Russell and Carson resulted in a voluntary assumption of a duty for the bar.

1. <u>Bar's Liability for Intentional Torts of Employees</u>

Reynolds suggests that the employees of Jerzey's conspired with Russell and Carson to further the sexual exploitation of Reynolds. Reynolds alleges that the bar's employees intentionally created the circumstances to make her an "easy target" for Russell and Carson, including denying her a phonebook or cab, assisting in the inducement of her intoxicated state, and allowing her to leave the bar with Russell and Carson.

However, if the bar's employees intentionally participated in furthering the sexual exploitation of Reynolds, the bar would not be liable for negligence, but rather, the bar's employees would be liable for intentional torts. As to the bar's liability, an employer is not vicariously liable for an employee's intentional tort as long as the tort was not committed in furtherance of the employee's employment, that is, the employee's motive was not to serve his or her employer. *Reynolds v. CB Sports, Inc.,* 623 F.3d 1143, 1147 (7th Cir. 2010); *see also Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004). Here, there is no evidence that the employees' motives were to serve Jerzey's.

Therefore, if the Court were to follow Reynolds' suggestion and to construe the events in this case as intentional torts by the bartenders and other bar employees, Jerzey's would have no liability for Reynolds' injuries.

2. <u>Bar's Duty to Reynolds for Negligent Conduct</u>

In addition to arguing a conspiracy between the bar's employees and Russell and Carson, Reynolds also alleges negligent conduct on behalf of the bar. The Seventh Circuit provided this Court guidance in *Reynolds v. CB Sports, Inc.*, 623 F.3d 1143 (7th Cir. 2010), as to the bar's duty to Reynolds.

First, the Seventh Circuit set forth the requirements for negligence in Illinois. Illinois substantive law applies to this case because federal jurisdiction is based on diversity of citizenship. *Reynolds,* 623 F.3d at 1148; *see also Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985). In Illinois, a plaintiff must establish a duty owed by the defendant, a breach of that duty, and an injury proximately caused by the breach. *Bell v. Hutshell*, 931 N.E.2d 299, 302 (Ill. App. Ct. 2010). Although no duty exists to protect someone from criminal acts by third parties, *see Hills v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1185-86 (Ill. 2000), a landowner has a duty to protect lawful entrants *on the premises* as long as a special relationship exists, such as between a business invitor or invitee, *see Rowe v. State Bank of Lombard*, 531 N.E.2d 1358, 1364 (Ill. 1988), and the criminal actions are reasonably foreseeable. *Hills*, 745 N.E.2d at 1186-87. "A criminal act by a third person is reasonably foreseeable when the circumstances are such as to put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun." *Shortall v. Hawkeye's Bar & Grill*, 670 N.E.2d 768, 770 (Ill. App. Ct. 1996).

Because Reynolds was injured more than a mile from the bar, the Seventh Circuit considered a number of cases to determine the state of the bar's legal duty here. *See Reynolds*, 623 F.3d at 1148-50. The court concluded that "no duty can exist unless the crime was reasonably foreseeable, that is, that a reasonable person under the circumstances would have known that an attack would occur." *Id.* at 1150 (citing *Haupt v. Sharkey,* 832 N.E.2d 198, 204 (Ill. 2005)). The court further held that assuming the bartender knew of Russell and Carson's criminal purposes, the unrealized attacks on Reynolds were reasonably foreseeable to the bar and that requiring a bar to protect against criminal attacks of the kind in this case is not overly burdensome if it *knows* they will be perpetrated. *Id.* at 1150-51 (emphasis added).

7

The Seventh Circuit also noted two limiting principles to its holding. First, Jerzey's was under no duty to investigate the plans or intentions of its patrons because it would create an undue burden on the bar, and second, Jerzey's had a duty to protect patrons against only those criminal attacks occurring far from its premises that it *knew* would occur. *Id.* at 1151-52. Therefore, because Jerzey's had no duty to investigate the motives of Russell and Carson, it can only be liable for the criminal plans of which it was actually aware. *Id.* at 1152.

Reynolds now argues that a reasonable jury could find from the sum of the circumstantial evidence that the bar's employees in fact knew of the scheme attempted by Russell and Carson, resulting in a duty of protection owed to her by Jerzey's. Reynolds alleges that several facts show the bar's knowledge, including Carson's private conversations with the bartenders, the bartenders' furtherance of her intoxicated state, the bartenders' refusal to assist Reynolds in getting a cab, and the bartender's statements vouching for Russell and Carson.

First, Reynolds has presented no evidence that any of the conversations between Carson, Russell and the bar's employees involved anything about the sexual exploitation of Reynolds. Further, no evidence shows that the bartender was serving Reynolds drinks with knowledge of Russell and Carson's impending plans. The evidence fails to reveal that the bartenders were doing anything other than their jobs, which is serving drinks to the bar's patrons. Reynolds contends a bartender served her a drink and moments later began to feel "a drug in [her] system." But even if Reynolds was drugged via her drink, no evidence indicates that the bartender had any involvement.

Further, although it was the bar's policy to provide a phonebook or cab to intoxicated patrons, under the law, "taverns are not required to ensure their patrons' safe passage to their cars or homes." *Id.* at 1153 (citing *Badillo v. DeVivo*, 515 N.E.2d 681, 683 (Ill. App. Ct. 1989)).

The bartenders were within their rights and power to refuse to provide Reynolds with a phonebook or cab, and their failure to do so does not reveal any knowledge of the plan to sexually exploit Reynolds. Finally, the evidence fails to show the bartender's knowledge of the plan when they made the statements to Reynolds concerning the character of Russell and Carson.

Therefore, the Court finds that a reasonable jury could not conclude from the circumstantial evidence, individually or taken together, that the bar had knowledge of Russell and Carson's plans to sexually exploit Reynolds.

### 3. Voluntary Assumption of Liability

Although the Court holds that a reasonable jury could not find from the evidence that the bar employees had knowledge of the alleged criminal plans, it is possible, however, that a reasonable jury could find that the bar assumed a duty to Reynolds when its bartender affirmatively represented to Reynolds that Russell and Carson were his friends and fine people, that they came there all the time, and that Reynolds should have no worries riding with them.

Illinois recognizes an affirmative duty of care where a voluntary undertaking is shown. *LM ex rel. KM v. United States*, 344 F.3d 695, 700 (7th Cir. 2003) (citing *Rhodes v. Illinois Central Gulf R.R.*, 665 N.E.2d 1260, 1273 (Ill. 1996)). For example, in *Nelson v. Union Wire Rope Corp.*, 199 N.E.2d 769 (Ill. 1964), the Illinois Supreme Court found that an insurance company's gratuitous safety inspections "were not solely for its own internal purposes," *LM ex rel. KM*, 344 F.3d at 700 (citing *Nelson*, 199 N.E.2d at 784), and that the evidence was sufficient to permit a jury to conclude that the defendant's safety inspector negligently performed his voluntarily undertaken duty to inspect a piece of construction equipment. *Id.* Further, in *Cross v. Wells Fargo Alarm Servs.*, 412 N.E.2d 472, 474 (Ill. 1980), the defendant voluntarily undertook to provide guard services in a public housing facility, which the court found to create a duty that

required the defendant "to use reasonable care not to create increased dangers to persons lawfully on its property." *LM ex rel. KM*, 344 F.3d at 700 (citing *Cross*, 412 N.E.2d 474-75). Ultimately, in Illinois, the existence of an assumption of a duty is necessarily a fact-specific inquiry. *LM ex rel. KM*, 344 F.3d at 700.

In this case, the bartender made affirmative statements to Reynolds concerning her safety with Russell and Carson, and the information volunteered by the bartender alleviated Reynolds' concerns about seeking a ride home with them. Therefore, the Court finds that a reasonable jury could conclude that the bartender's statements to Reynolds resulted in a voluntarily assumed duty to protect Reynolds from Russell and Carson's ill intentions.

### B. Duty to Call a Cab for Reynolds

The Seventh Circuit has already addressed the bar's duty to call Reynolds a cab, holding that "simply not giving Reynolds a phone book or telling her to get a ride with someone else in the bar is not enough to say that [Jerzey's] voluntarily assumed a duty to ensure her safe arrival at her hotel." *Reynolds v. CB Sports, Inc.*, 623 F.3d 1143, 1153 (7th Cir. 2010). Therefore, this Court finds no need to further address this issue and holds that Jerzey's had no duty to call a cab for Reynolds.

### C. Proximate Cause

"[P]roximate cause is preeminently an issue of fact to be decided by a jury," *Reynolds v. CB Sports, Inc.*, 623 F.3d 1143, 1152 (7th Cir. 2010) (citing *Rivera v. Garcia*, 927 N.E.2d 1235, 1242 (Ill. 2010)), and the court should only determine a lack of proximate cause "where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." *Reynolds*, 623 F.3d at 1152 (citing *Young v. Bryco Arms*, 821 N.E.2d 1078, 1086 (Ill. 2004)).

Admittedly, this case presents a bizarre chain of events, and the Court acknowledges that several factors may have existed that led to Reynolds' injuries, but the Court finds that it is possible for a reasonable jury to find proximate cause here. Therefore, the Court reserves the issue of proximate cause for the jury.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the defendant's motion for summary judgment (Doc. 110) on the basis that a reasonable jury could find from the facts that the bartender's statements to Reynolds resulted in an voluntary assumption of a duty for the bar, that the bar breached its duty, and that the bar's breach proximately caused Reynolds' injuries.

**IT IS SO ORDERED.**
**DATED: February 1, 2012**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**